IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

V.T., an individual proceeding
under a fictitious name,

        1:09-cv-03007-PA

    Plaintiff,

v.                      OPINION AND ORDER

CITY OF MEDFORD, OREGON, a
municipal subdivision of the
State of Oregon; OFFICER
JONES, an unknown individual
referred to under a fictitious
name; OFFICER SMITH, an
unknown individual referred to
under a fictitious name,

    Defendants.

---

**PANNER, District Judge:**

    This matter comes before the Court on Defendants' Motion for Summary Judgment (#31). Defendants' Motion is GRANTED.

## Background

    Plaintiff was born on July 4, 1965. In December 1981,

1 — ORDER

Plaintiff was sixteen years old and living with foster parents in Medford, Oregon.

On the night of December 24-25, 1981, Plaintiff attended a party. Plaintiff became very intoxicated and was ejected from the party. Plaintiff then created a disturbance of some kind which resulted in the police being called. Officers arrived to arrest Plaintiff at approximately 3:30 a.m. on December 25, 1981. Plaintiff recognized one of the arresting officers as a man named "Ed," who was a neighbor of Plaintiff's father.

Medford's juvenile hall declined to take custody of Plaintiff due to his intoxication. Plaintiff's foster parents also declined to take custody of him, apparently for the same reason. The officers transported Plaintiff to the Medford Police Department where he would be held until he was sober enough to be taken to juvenile hall.

At the police station, Plaintiff alleges that he was taken to a small room by "Ed" and an African American police officer. Plaintiff alleges that he was handcuffed over a chair and that his pants were pulled down. Plaintiff alleges that the officers twice inserted a nightstick into his rectum. Plaintiff alleges that the pain he experienced was intense, rating it a "ten" on a scale of one to ten. Plaintiff alleges that he screamed in pain and called out for his father. Plaintiff also alleges that during the abuse he urinated on his clothes and got an erection and that the police mocked him. Plaintiff alleges that, during the abuse, a third person entered the room and told the officers that they "shouldn't be doing that." Plaintiff alleges that the two officers

2 - ORDER

responsible for the abuse told the third person to leave and that the third person did so.

After the abuse was concluded, Plaintiff alleges that another officer came and took him to a cell. At 8:30 a.m. on December 25, 1981, Plaintiff was transported to juvenile hall.

Plaintiff did not disclose the alleged abuse until March 12, 2007, when he told his mental health counselor. Plaintiff filed his tort claim notice on April 21, 2008.

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether or not a fact is material is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). There is a genuine dispute if the evidence is such that a reasonable jury would return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material facts should be resolved against the moving party; and (2) all inferences must be drawn in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630-31.

3 - ORDER

## Discussion

Defendants move to dismiss all of Plaintiff's claims on the basis that they are time barred.

### I. Plaintiff's § 1983 Claim

#### A. Municipal Liability under Monell Generally

A municipality can be held responsible for a violation of a citizen's constitutional rights under 42 U.S.C. § 1983 only when it has a policy, custom, or usage that violates those rights. Monell v. New York City Dep't of Social Serv., 436 U.S. 658, 690-91 (1978). A city is not liable under § 1983 merely because it employs a tortfeasor. Id. Rather, the municipality itself must be the actor and the plaintiff must plead and prove that the municipality adopted a policy or custom and that the execution of that policy or custom caused the constitutional violation. Id. at 694. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)(emphasis in original). Municipal "[l]iability may attach . . . only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Ulrich v. City and Cnty. of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002)(quoting Monell, 436 U.S. at 694).

In this case, Plaintiff alleges that the City of Medford had

4 - ORDER

a policy or practice of allowing the Defendant Officers to harm and abuse young men and of concealing the Officers' wrongdoing. Defendants contend that Plaintiff's claim is not timely because the statute of limitations required Plaintiff to bring his claim on or before July 4, 1984.

### B. Accrual of Claims

Accrual is the date on which the statute of limitations begins to run. Although state law determines the limitations period for § 1983 actions, federal law governs as to when a § 1983 claim accrues.[1] Lukovsky v. City and Cnty. of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008). Under federal law, a claim accrues when "the plaintiff knows or has reason to know of the injury." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). The Ninth Circuit has held "that a claim accrues not just when the plaintiff experiences the injury but when the plaintiff knew or in the exercise reasonable diligence should have known of the injury and the cause of that injury." Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 581 (9th Cir. 2012)(quotes omitted).

In Bonneau, the plaintiff alleged that between 1986 and 1988 he was beaten by school teachers. Bonneau, 666 F.3d at 579. The Ninth Circuit declined to delay accrual of the plaintiff's claims,

---

[1] Plaintiff argues that the Court should apply the accrual standard articulated in T.R. v. Boy Scouts of America, 344 Or. 282 (2008). Plaintiff's reliance on T.R. is misplaced, however. As noted, federal law governs the accrual of a federal cause of action. Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 581 (9th Cir. 2012); Matheny v. Clackamas Cnty., No. 3:10-cv-1574-BR, 2012 WL 171015 at *4 (D. Or. Jan. 20, 2012)(declining to apply the standard set forth in T.R.).

5 - ORDER

holding that the plaintiff was aware of the injuries that he experienced as a child and their causes. Id. at 581.

In Plumeau v. School District No. 40 County of Yamhill, 130 F.3d 432 (9th Cir. 1997), the minor plaintiff was sexually abused by a school janitor on school premises between 1984 and 1987. The plaintiff disclosed the abuse to her parents after attempting suicide in 1992. Id. at 435. The plaintiff then delayed initiating an action against the school district until 1994. Id. The Ninth Circuit held that the cause of action accrued in 1992 because at that time the plaintiff "knew the abuse took place during school hours and on school property and that the abuser was a school district employee." Id. at 437-38. The Ninth Circuit concluded that these facts were sufficient to appraise the plaintiffs of their potential claims against the school district. Id.

In this case, Plaintiff alleges that the abuse was extremely painful. Although Plaintiff alleges that he did not discover his psychological injuries until later, the direct and violent nature of the alleged abuse is analogous to the beatings suffered by the plaintiff in Bonneau. I conclude that, as in Bonneau, Plaintiff was aware of the injury. Plaintiff alleges that the abuse occurred while in police custody at a police facility. Plaintiff alleges that the abuse was committed by two Medford police officers and that it was witnessed by an unknown third person. As in Plumeau, Plaintiff knew, or in the exercise of reasonable diligence should have known, of the potential that the City of Medford was involved. I conclude, therefore, that Plaintiff's

6 - ORDER

claim accrued on December 25, 1981.

### C. Equitable Tolling and Equitable Estoppel

In his Response in Opposition to the Motion for Summary Judgment (#35) Plaintiff alleges for the first time that his § 1983 claim should be tolled on the bases of equitable tolling and equitable estoppel. In support of these new theories Plaintiff submitted a Declaration (#36) alleging that, during the abuse, the officers threatened to kill him and that fear of the officers prevented him from filing this action within the ordinary limitations period.

#### 1. Sham Affidavit

Plaintiff gave a detailed deposition in this case on July 8, 2014. At that time, Plaintiff testified as follows:

> Q: Have you - did you ever report the nightstick incident to -
> A: Never.
> Q: Never?
> A: No.
> Q: Why not?
> A: Fear and shame.
> Q: And what was your fear?
> A: I didn't understand it. I was a kid. I was 15 years old.

Franz Decl. Ex. 101, at 55.

> Q: And then why is - how did it come about that you told Patty Neal about the abuse incident?
> A: I don't really know. I kept that inside for so long and I can't answer why.

Id. at 67.

On September 22, 2014, Plaintiff submitted a Declaration (#36) which states:

> I was threatened by the officers. They repeatedly told me "We are going to kill you, you little fucker", "You belong to us", and "[Your] daddy can't help you now" while laughing at me.

7 - ORDER

V.T. Decl. 2.

In his Response brief (#35), Plaintiff contends the threats of the officers made him fear disclosing the abuse and, as a consequence, he did not file this action within the limitation period. Defendants contend Plaintiff's new Declaration (#36) should be stricken under the "sham affidavit" rule.

The sham affidavit rule is intended to prevent a party from manufacturing an issue of fact by presenting an affidavit that contradicts prior deposition testimony. <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998 (9th Cir. 2009). Courts should be cautious with application of the sham affidavit rule, applying it only after 1) making a factual determination that the contradiction was actually a sham and 2) determining that the inconsistency between the party's deposition and subsequent affidavit is "clear and unambiguous." <u>Id.</u> at 998-99.

Upon review of the record, I cannot conclude that the inconsistencies between Plaintiff's deposition testimony and his later Declaration are "clear and unambiguous." Plaintiff testified that he never disclosed the abuse due to "fear and shame," and it is not clearly inconsistent to suppose that he meant that he was afraid of the threats allegedly made by the Officers. Nor is Plaintiff's inability to articulate why he disclosed the abuse to his counselor clearly inconsistent with the allegation that he was threatened by the Officers.

Although I note that the timing and contents of Plaintiff's Declaration are highly suspicious, I am also mindful that the sham affidavit rule is to be applied with caution. As a consequence, I

8 - ORDER

decline to strike Plaintiff's Declaration as a sham.

### 2. Equitable Estoppel

Plaintiff asserts that the Defendant Officers threatened him while they abused him. The specific language of the alleged threats is discussed above. Plaintiff argues that the threats caused him to delay filing this action.

In limited circumstances, courts may apply the doctrine of equitable estoppel to extend the limitations period. Plaintiff relies on M.N.O. v. Magana, No. 03-6393-TC, 2006 WL 559214 (D. Or. Mar. 6, 2006) in support of his claim to equitable estoppel. In M.N.O., several women brought suit against the City of Eugene for the acts of two police officers who used their positions of authority to sexually assault the women. The court held that equitable estoppel was available for § 1983 claims if the plaintiff could demonstrate that:

> 1) the defendant made specific promises, threats or inducements that prevented the plaintiff from filing suit; 2) those promises threats or inducements actually caused the plaintiff to forbear filing the lawsuit; 3) the forbearance was reasonable and 4) the plaintiff filed suit within a reasonable time after termination of the conduct causing such forbearance.

Id. at *2.

Plaintiff's reliance on M.N.O. is misplaced. In that case, the court was careful to note that a "natural fear" of retribution was insufficient to meet the requirements of equitable estoppel. Id. at *3. Rather, the court looked for instances where the defendants "directly threatened physical harm to a plaintiff if she instigated an action against him." Id. Indeed, the court

9 - ORDER

rejected several of the plaintiffs' assertions of equitable estoppel where the defendant officers had not made "specific" threats "to enforce [the plaintiff's] silence or threatened that she was in physical danger if she filed suit." Id. at *3-4.

In this case, Plaintiff's Declaration alleges that the officers made very general threats. The threats Plaintiff describes, while alarming, are not directed at enforcing Plaintiff's silence, nor do they threaten retaliation if Plaintiff were to bring suit. As in M.N.O., the threats lack the specificity needed to invoke the doctrine of equitable estoppel. Plaintiff's "natural fear" of retaliation is insufficient to justify equitable estoppel.

Additionally, the equitable estoppel doctrine set forth in M.N.O. requires that the plaintiff bring the action within a reasonable time after the threatening condition is terminated. In this case, Plaintiff left the Medford area not long after the alleged abuse. In the intervening decades, Plaintiff has lived in a number of states. Plaintiff provides no explanation for why he did not bring this action once he no longer lived in Medford.

No reasonable jury could conclude that Defendant should be estopped from asserting the statute of limitations in this case.

### 3. Equitable Tolling

Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if, despite the exercise of all due diligence, he is unable to obtain vital information bearing on the existence of his claim. Shropshear v. Corp. Counsel of City of

10 - ORDER

Chicago, 275 F.3d 593, 595 (7th Cir. 2001). Actions brought under § 1983 follow the forum state's tolling rules when not inconsistent with federal law. Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).

Oregon law provides very little precedent for equitable tolling. See Hagen v. Williams, No. 6:14-cv-0165-MC, 2014 WL 6893708 at *4 (D. Or. Dec. 4, 2014)(so stating); Womack v. McTeague, No. 2:10-cv-332-SU, 2012 WL 3011006 at *8 (D. Or. June 11, 2012)(noting the absence of Oregon law on equitable tolling); D.H.M. v. Or. Youth Auth., No. 06-143-KI, 2008 WL 1766727 at *5 (D. Or. Apr. 8, 2008)(finding no precedent for applying equitable tolling to § 1983 claims).

I note that Plaintiff cites no Oregon cases on equitable tolling in § 1983 actions. Instead, Plaintiff relies on federal cases involving other statutes. See Stoll v. Runyan, 165 F.3d 1238 (9th Cir. 1999)(a Title VII action against the Post Office); Doe v. Busby, 661 F.3d 1001 (9th Cir. 2011)(a habeas petition); Golden v. Faust, 766 F.2d 1339 (9th Cir. 1985)(involving adequate pleading of equitable tolling under California law).

In the absence of Oregon law establishing the existence of equitable tolling, I decline to apply it here.

### D. Statute of Limitations

The Ninth Circuit has held that actions for child abuse brought under 42 U.S.C. § 1983 are subject to the two-year statute of limitations set forth in ORS 12.110, rather than the special child abuse statute of limitations, ORS 12.117. Bonneau, 666 F.3d

11- ORDER

at 579-80. When the plaintiff in a § 1983 case is a minor, the Ninth Circuit has held that courts should apply the tolling provision of ORS 12.160, which tolls the statute of limitations until one year after the plaintiff reaches the age of eighteen. Id. at 580.

In this case, Plaintiff's § 1983 claim is subject to the two-year statute of limitations set forth in ORS 12.110. As Plaintiff was under the age of eighteen at the time the cause of action accrued, the tolling provision of ORS 12.160 applies. Because Plaintiff brought this action more than twenty-five years after he attained the age of eighteen, I conclude that the action is untimely. Defendants' Motion for Summary Judgment on this claim is GRANTED.

## II. State Law Claims

Plaintiff brings state law claims for negligence against all Defendants, as well as claims for sexual battery against Defendant Officers and vicarious liability against Defendant City of Medford. Plaintiff alleges that the acts of the Defendant Officers were taken "within the course and scope of their employment and agency." Defendants argue that Plaintiff's claims are barred for failure to give timely tort claim notice pursuant to the Oregon Tort Claims Act ("OTCA"), ORS 30.260-30.300.

The OTCA provides that "[n]o action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this

12 - ORDER

section." ORS 30.275(1). For the types of claims asserted in this case, the notice must ordinarily be given "within 180 days after the alleged loss or injury." ORS 30.275(2). However, "a plaintiff who is a minor at the time of an alleged loss or injury must give notice of claim within 270 days and must commence the action within two years following the alleged loss or injury." Doe 1 v. Lake Oswego Sch. Dist., 353 Or. 321, 327 (2013)(quotation marks omitted). "The limitations period for an OTCA claim for alleged loss or injury does not begin to run until a plaintiff has a reasonable opportunity to *discover his injury* and the identity of the party responsible for that injury." Id. (quotation marks omitted, emphasis in the original). Under the OTCA, an "injury" is discovered "when a plaintiff knows or should have known of the existence of three elements: (1) harm; (2) causation; and (3) tortious conduct." Id. at 328. Those three elements also incorporate a fourth element: "the probable identity of the tortfeasor." Id. at n.12.

In this case, Plaintiff filed his tort claim notice on April 21, 2008. The parties devote considerable time to arguing when Plaintiff "discovered" his injury for the purposes of the OTCA. Defendants contend that the injury was discovered on December 25, 1981. Plaintiff contends that he did not discover the injury until early 2007. It is not necessary to resolve this issue because, even if I accept the later date offered by Plaintiff, the OTCA notice was not timely.

In his Response brief, Plaintiff represented that he "did not

13- ORDER

understand or appreciate the connection between the sodomizing event and any harms he sustained by the police officers, until he underwent mental health therapy in 2007 *and discovered that connection on March 12, 2007.*" Pl.'s Resp. to Defs.' Mot. Summ. J. 9 (emphasis added)[2]. If we accept Plaintiff's representation that he discovered his injury on March 12, 2007, the latest date on which Plaintiff might have filed a tort claim notice was 270 days later, or December 7, 2007. Plaintiff did not file his tort claim notice until April 21, 2008, which is 405 days after the alleged date of discovery.

Plaintiff argues that he did not discover the City's involvement in his injury until after discovery closed in this case and that his tort claim notice was therefore timely. This argument is without merit. Setting aside the fact that Plaintiff might reasonably have discovered his injury prior to March 12, 2007, Plaintiff knew that the alleged assault was committed by Medford police officers in a Medford police facility while

---

[2]The date given by Plaintiff is supported elsewhere in the record. In Plaintiff's Amended Complaint he alleges that "[i]n or about early 2007, Plaintiff discovered the causal connection between abuse by the Officers and the injuries set forth above." Am. Compl. 8. In his July 8, 2014, deposition, Plaintiff stated that he disclosed the abuse to Patti Neal "around 2006 [or] 2007." Franz Decl. Ex. 101, at 56. Plaintiff also states in his Declaration of September 22, 2014, that he "did not realize the connection between the police misconduct and my harms until it came up in a counseling session in 2006 or 2007 when I saw a psychologist where I live in Hawaii." V.T. Decl. 2. This date is further supported by the treatment notes of Plaintiff's mental health counselor, Patti Neal, which indicate that Plaintiff disclosed "abuse by law enforcement" to her on March 12, 2007. Franz Decl. Ex. 107, at 39.

14 - ORDER

Plaintiff was in the custody of the Medford police. No reasonable jury could conclude that Plaintiff unaware of the City of Medford's potential liability on or before March 12, 2007. I conclude, therefore, that Plaintiff had a reasonable opportunity to discover his injury and the party responsible for his injury by no later than March 12, 2007. Additionally, I note that Plaintiff sent his untimely tort claim notice to the City of Medford on April 21, 2008, despite his claim that he did not discover the City's liability until after the close of discovery six years later.

Plaintiff argues that the doctrine of equitable estoppel should apply to his OTCA notice, advancing essentially the same argument presented in support of equitable estoppel for his § 1983 claim. The standard for equitable estoppel under Oregon law is the same for both § 1983 actions and OTCA notice issues. See M.N.O., 2006 WL 559214 at *3; Duncan v. Oregon, 2007 WL 789433, at *8 (D. Or. Mar. 14, 2007). Accordingly, my analysis of equitable estoppel on the § 1983 claim applies with equal force to Plaintiff's OTCA notice argument. No reasonable jury could conclude that Defendant should be estopped from asserting failure to provide timely OTCA notice in this case.

Defendants are entitled to summary judgment on Plaintiff's state law claims based on Plaintiff's failure to provide timely notice under the OTCA. Defendants' Motion for Summary Judgment on Plaintiff's state law claims is GRANTED.

15- ORDER

### III. Plaintiff's Motion to Amend the Complaint

On December 8, 2014, two days before oral argument on Defendants' Motion for Summary Judgment, Plaintiff filed a Motion to File a Second Amended Complaint (#54). Plaintiff's proposed amendments name the Defendant Officers and generally refine the claims made in the Amended Complaint. None of the proposed amendments are sufficient to render Plaintiff's claims timely. I therefore DENY Plaintiff's motion as futile.

### Conclusion

Defendants' Motion for Summary Judgment (#31) is GRANTED.

IT IS SO ORDERED.

DATED this 22 day of January, 2015.

*(signature)*

OWEN M. PANNER
U.S. DISTRICT JUDGE